Dear Dr. Antonio:
This letter is issued in response to your question asking:
 Is it legally permissible for the Department of Elementary and Secondary Education to have bank accounts outside the state treasury which accounts are used for receipts and disbursements relating to the child nutrition programs at some of the state schools for the severely handicapped?
The General Assembly has designated the State Board of Education as the body to operate a system of schools denominated as the State Schools for Severely Handicapped Children. Section162.725.1, RSMo 1978; Section 162.730.1, RSMo Supp. 1983 ("which schools or programs shall be referred to herein as `state schools for severely handicapped children.'"). The State Schools for Severely Handicapped Children, the Missouri School for the Blind at St. Louis, and the Missouri School for the Deaf at Fulton are all within the Division of Special Services of the Department of Elementary and Secondary Education. Section 162.730.2, RSMo Supp. 1983; Section 5.4 of the Omnibus State Reorganization Act of 1974, App. B, RSMo 1978; Departmental Plan of the Department of Elementary and Secondary Education, App. C(1), RSMo Supp. 1983. The General Assembly has granted to the State Board of Education broad authority to "determine and approve all policies for the operation of said schools or programs." Section162.730.3(3), RSMo Supp. 1983.
We are informed that as part of the operation of the eighteen (18) Schools for Severely Handicapped Children, separate bank accounts have been established and are maintained to fund the child nutrition programs at several of the individual Schools for Severely Handicapped Children. Each account is held in the name of the state school involved[1], and requires the signatures of the teacher in charge[2] and the area supervisor for every check drawn on the account. The children and staff at the various schools pay amounts for their lunches served on the premises, which are deposited into these accounts. Federal and state subsidies and grants are received and deposited into these accounts also. Employees of the Department of Elementary and Secondary Education at the state level may not write checks on any of these accounts and funds may be withdrawn for the nutrition program only with the signatures indicated above.
Article IV, Section 15, Missouri Constitution, states in part:
 The state treasurer shall be custodian of all state funds. All revenue collected and moneys received by the state from any source whatsoever shall go promptly into the state treasury, . . . .
The operation of a predecessor of this constitutional provision has been construed in the leading case of State ex rel. Thompsonv. Board of Regents for Northeast Missouri State Teachers'College, 305 Mo. 57, 264 S.W. 698 (banc 1924). Therein, the State Treasurer brought an action in mandamus to compel the Board of Regents of the Northeast Missouri State Teachers' College to pay certain fire insurance proceeds collected by the Board over to the State Treasurer. In the Thompson case, the court defined the phrase "revenue collected and money received by the state from any source whatsoever", Article IV, Section 43, Missouri Constitution (1875), in the following manner:
 By revenue, whether its meaning be measured by the general or the legal lexicographer, is meant the current income of the state from whatsoever source derived which is subject to appropriation for public uses. This current income may be derived from various sources, as our numerous statutes attest, but, no matter from what source derived, if required to be paid into the treasury, it becomes revenue or state money; its classification as such being dependent upon specific legislative enactment,
or, as aptly put by the respondent, state money means money the state, in its sovereign capacity, is authorized to receive, the source of its authority being the Legislature.
305 Mo. at 64-65, 264 S.W. at 700 (emphasis added). Compare this definition of the term "revenue" with the definitions of such term found at Buechner v. Bond, 650 S.W.2d 611, 613 (Mo. banc 1983) and State Highway Commission v. Spainhower, 504 S.W.2d 121,127 (Mo. 1973).
Applying this standard to the facts at issue in Thompson,
the court stated:
 II. In the foregoing discussion of the constitutional provision invoked by relator, we have stated generally that no statute required the payment into the state treasury of the money here in controversy, and that a statutory enactment was a prerequisite to such payment and its receipt and deposit by the treasurer to entitle it, under the Constitution, to be classified as state money.
305 Mo. at 67, 264 S.W. at 701 (emphasis added).
In our view, the Thompson case clearly stands for the proposition that a statute requiring the deposit of moneys into the state treasury is a precondition to the application of ArticleIV, Section 15, Missouri Constitution.
Section 33.080, RSMo 1978, states in part:
 All fees, funds and moneys from whatsoever source received by any department, board, bureau, commission, institution, official or agency of the state government by virtue of any law or rule or regulation made in accordance with any law, shall, by the official authorized to receive same, and at stated intervals of not more than thirty days, be placed in the state treasury to the credit of the particular purpose or fund for which collected, and shall be subject to appropriation by the general assembly for the particular purpose or fund for which collected during the biennium in which collected and appropriated. . . . Any official or any person who shall willfully fail to comply with any of the provisions of this section, and any person who shall willfully violate any provision hereof, shall be deemed guilty of a misdemeanor; provided, that all such money received by the curators of the university of Missouri except those funds required by law or by instrument granting the same to be paid into the seminary fund of the state, is excepted herefrom, and in the case of other state educational institutions there is excepted herefrom, gifts or trust funds from whatever source; appropriations; gifts or grants from the federal government, private organizations and individuals; funds for or from student activities; farm or housing activities; and other funds from which the whole or some part thereof may be liable to be repaid to the person contributing the same; and hospital fees. All of the above excepted funds shall be reported in detail quarterly to the governor and biennially to the general assembly.
(Emphasis added.)
Section 136.010.2, RSMo 1978, states:
 All money payable to the state, including gifts, escheats, penalties, federal funds, and money from every other source payable to the state shall be promptly transmitted to the division of taxation and collection; provided that all such money payable to the curators of the university of Missouri, except those funds required by law or by instrument granting the same to be paid into the seminary fund of the state, is excepted herefrom, and in the case of other state educational institutions there is excepted herefrom, gifts or trust funds from whatever source, appropriations, gifts or grants from the federal government, private organizations and individuals, funds for or from student activities, farm or housing activities, and other funds from which the whole or some part thereof may be liable to be repaid to the person contributing the same, and hospital fees. All of the above excepted funds shall be reported in detail quarterly to the governor and biennially to the general assembly.
(Emphasis added.)
When read with Thompson, these statutes establish an exemption from Article IV, Section 15, Missouri Constitution, for "state educational institutions". The phrase "state educational institutions" is not defined with reference to Sections 33.080
and 136.010.2, RSMo 1978. Cf. Section 176.010(5)(a)-(e), RSMo Supp. 1983 (defining the phrase "state educational institutions" for purposes of Chapter 176, RSMo 1978 and Supp. 1983).
Section 110.010.1, RSMo 1978, includes the Missouri School for the Deaf and the Missouri School for the Blind in the security provisions of the statutes governing the deposit of public funds in local depositaries. We believe that the inclusion of the Missouri School for the Deaf and the Missouri School for the Blind in the provisions of Section 110.010.1, RSMo 1978, evidences a legislative intent that such schools be allowed to have local bank deposits; i.e., that such schools are "state educational institutions". The Missouri School for the Deaf, the Missouri School for the Blind, and the State Schools for Severely Handicapped Children are all combined within the Division of Special Services of the Department of Elementary and Secondary Education. See., e.g., Section 162.730.2, RSMo Supp. 1983; Departmental Plan of the Department of Elementary and Secondary Education, App. C(1), RSMo Supp. 1983. We find no persuasive rationale supporting the conclusion that the Missouri School for the Deaf and the Missouri School for the Blind are state educational institutions, but that the State Schools for Severely Handicapped Children are not state educational institutions. Either all of these schools are state educational institutions orall of them are not. The inclusion of the Missouri School for the Deaf and the Missouri School for the Blind in the local depositary agreement statutes, Chapter 110, RSMo 1978 and Supp. 1983, shows that all of these institutions are state educational institutions for purposes of Sections 33.080 and 136.010.2, RSMo 1978. This is consistent with the common law definition of an educational institution found at State ex rel. Kaegel v. Holekamp,151 S.W.2d 685, 690 (Mo.App. 1941) ("[T]he ordinance obviously contemplates schools in the usual sense, that is, institutions of learning which exist independently as such; have a definite curriculum or course of study; and are designed to serve as the medium for importing to students who attend them a knowledge of those things broadly covered within the field of education.").
Having concluded that the Schools for Severely Handicapped Children are state educational institutions for purposes of Sections 33.080 and 136.010.2, RSMo 1978, the only remaining question is whether the types of moneys at issue fit into the "state educational institution" exemption in those statutes. Three types of moneys are deposited into the accounts in question: (1) federal grants and subsidies, (2) state appropriations, and (3) amounts paid by students and staff for lunches. The first two types of moneys are specifically exempted from deposit in the state treasury by Sections 33.080 and 136.010.2, RSMo 1978. The third item — lunch moneys — appears to fall into the category of "funds for or from student activities", Sections33.080 and 136.010.2, RSMo 1978, insofar as meal time for students in the Schools for Severely Handicapped Children represents an integral part of the nutrition program of such schools.
Accordingly, it is the opinion of this office that, pursuant to Section 162.730.3(3), RSMo Supp. 1983, the State Board of Education may establish a policy of allowing the State Schools for Severely Handicapped Children to have bank accounts outside the State Treasury for receipts and disbursements relating to the child nutrition programs of such schools. We encourage the State Board of Education to formalize such policy and to establish written rules regulating these deposits.
Very truly yours,
 JOHN ASHCROFT Attorney General
[1] The name of each account appears substantially as "State School number _____, School Food Service, Department of Elementary and Secondary Education". The number of the appropriate school is inserted in the name designation.
[2] The teacher in charge functions in the traditional role of a principal in the public schools.